GEORGE M. OLCOTT, Assignee, etc., Respondent *v.* JOHN MACLEAN and others, Appellants.

*Assignee in bankruptcy — action to recover assets of bankrupt — in what court it must be brought — jurisdiction of State court — of United States District Court — when exclusive — § 2 of chap. 390 of act of congress of 1874.*

By section 2 of chapter 390 of the act of congress of 1874, providing "that the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt * * * shall, when such debt does not exceed $500, be collected in the courts of the State where such bankrupt resides," the United States District Court is vested with exclusive jurisdiction over all actions brought by an assignee to recover property alleged to have been transferred by the bankrupt in violation of section 5128 of the United States Revised Statutes, where the value of such property is greater than $500.

Although prior to the passage of the act of 1874 the State court had concurrent

jurisdiction with the United States District Court over such actions, yet by the passage thereof such jurisdiction was withdrawn from it, even as to actions theretofore commenced and then pending therein.

APPEAL from a judgment in favor of the plaintiff recovered on the verdict of a jury for $1,320.63, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*George A. Black*, for the appellants. By the enactment of the Revised Statutes of the United States on June 22, 1874, the jurisdiction of the United States courts became " exclusive " over actions of this character. ( *Vide* R. S. of U. S., § 711, subd. 6, p. 134; § 4972, p. 969 ; act of congress, 1874, chap. 390, § 2.) The pendency of this action at the time the act of June 22, 1874, was passed is no reason to except it. (*Butler* v. *Palmer*, 1 Hill, 330 ; *Matter of Palmer*, 40 N. Y., 561 ; *Frost* v. *Hotchkiss*, 1 Abb. New Cas., 27.) The cases in which the courts of this State have considered the effect of the " exclusive jurisdiction " granted to the United States courts by act of congress are not very numerous. They are, as to consuls : *Davis* v. *Packard* (6 Wend., 327) ; *Davis* v. *Packard* (10 id., 50) ; *Davis* v. *Packard* (6 Peters, 41) ; *Davis* v. *Packard* (7 id., 276) ; *Davis* v. *Packard* (8 id., 314) ; *Valarino* v. *Thompson* (7 N. Y., 576). As to States : *Delafield* v. *State of Indiana* (26 Wend., 215 ; 2 Hill, 159). As to postmasters : *Hall* v. *Felton* (1 N.Y., 544 ; 12 How. [U. S.], 284). As to admiralty : *In re Josephine* (39 N. Y., 25) ; *Brookman* v. *Hamill* (43 id., 555) ; *Brookman* v. *Hamill* (46 id., 636 ; *Vose* v. *Cockcroft* (44 id., 415). As to infringement of patents : *Dudley* v. *Mayhew* (3 N. Y., 9). As to pilotage : *Cisco* v. *Roberts* (36 N. Y., 35) ; *Com. of Pilots* v. *Pacific M. S S. Co.* (52 id., 609) ; *Henderson* v. *Spofford* (59 id., 131). In all these cases the power of congress to create the remedy or right and confine its exercise to its own courts is recognized. (*Lathrop, Assignee,* v. *Drake*, 13 Bank. Reg., 472.) Having no jurisdiction, the judgment must be reversed absolutely, and with costs. (*Ayres* v. *West. R. R. Co.*, 45 N. Y., 260 ; 49 id., 660 ; *McMahon* v. *Mut. Benefit Ins. Co.*, 3 Bosw., 644.)

*William P. Chambers*, for the respondent.

Daniels, J.:

The verdict in this case was rendered for the value of certain goods received by the defendants from James S. Aspinwall. The same goods had been sold by the defendants and shipped by them, at London, to him in New York. The shipment was made on the last day of October, 1872, and he received the goods in November following. The 5th or 6th of December, 1872, he suspended payment, and did not afterwards resume. He was insolvent at that time, and on the 27th day of January, 1873, petitioned for the benefit of the bankrupt law. Before doing that, and on the tenth day of the month preceding, he delivered to the defendants' agent, at New York, an instrument in writing, by which he stated that he held part of the goods in store for account of the defendants. And on the 7th day of January, 1873, in compliance with orders drawn upon him by the defendants' agent, he delivered to such agent those goods and others shipped with them by the defendants. The plaintiff was appointed assignee in the bankruptcy proceedings on the 25th of February, 1873. And after demanding these goods from the defendants, he commenced this action for the recovery of their value. An attachment was issued and the property attached under it. The defendants thereupon appeared by attorney in the action. It is not necessary to examine into the merits of the objection urged, that the attachment was an irregular proceeding, for that point cannot properly be made in the present state of this action. The appearance itself gave the court jurisdiction over the persons of the defendants, and it is too late now to object that it was irregularly secured. (*Brown* v. *Nichols*, 42 N. Y., 26.)

When the goods were received by Aspinwall, as they appear to have been in November, he became their absolute owner. His title was complete, and nothing was done by him to divest it until after he had become insolvent and suspended payment. For that reason, it was insisted by the plaintiff that the return of the goods to the defendants' agent was in fraud of the bankrupt act, and entitled him to a recovery of their value as the assignee. Their value was shown to have exceeded the sum of $1,300, and, for that reason, it was objected that the change made in the law in 1874 deprived this court of jurisdiction over the controversy. When it was commenced in 1873, it was settled by authority that this court had juris-

diction over such an action brought by an assignee in bankruptcy. (*Cook* v. *Whipple*, 55 N. Y., 150.) But during its pendency, and before the trial, the law defining the powers of the United States District Courts over the collection of the assets of the bankrupt was amended by the addition of the proviso: "That the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the State where such bankrupt resides, having jurisdiction of claims of such nature and amount." (Laws of 1874, 178, § 2.)

The cause of action relied upon for a recovery in this case arose out of an alleged violation of the provision of the bankrupt law, declaring, as it has been amended, "that if any person, being insolvent or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered or seized on execution, or makes any payment, pledge, assignment, transfer or convey- ance of any part of his property, either directly or indirectly, abso- lutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and knowing that such attachment, payment, pledge, assignment or conveyance is made in fraud of the provisions of this title, the same shall be void, and the assignee may recover the prop- erty, or the value of it, from the person so receiving it, or so to be benefited." (U. S. Revised Statutes, 996, § 5128 ; Laws of Cong. of 1874, p. 180, § 11, sub. 1.)

It was literally, therefore, a case arising under the laws of the United States that this action was brought. upon ; and for that reason, the exclusive jurisdiction of the United States courts could be constitutionally extended over it by act of congress. (U. S. Const., art. 3, § 2, sub. 1.) And it appears that it was the intention of the amendment enacted in 1874, and already mentioned, to accomplish that result; for by providing that actions for the collec- tion of debts, not exceeding in amount the sum of $500, might

be allowed to be prosecuted in courts of the State where the bank-rupt resides, having jurisdiction of claims of such nature and amount, it was designed that it should be understood that the State courts should be limited and restricted to that class of cases arising under the provisions of the bankrupt law. Enumerating the cases that might be prosecuted in such courts, excluded all others not included by the import of the terms made use of. That is a well-settled rule of construction, and it has been long applied to the interpretation of statutory provisions. By the terms made use of, ·a negative is implied and understood beyond the power actually declared. As the section of the act has been amended, it now pro-vides that the jurisdiction of the District Courts of the United States, as courts of bankruptcy, shall extend, ·among other enumer-ated cases, to those for the collection of all the assets of the bank-rupt, except actions for the recovery of debts not exceeding $500, which may be directed by the District Court to be collected in the courts of the State where the bankrupt resides, having jurisdiction of claims of that nature. (U. S. Revised Statutes, 969, First Session; Laws of 1874, 178, § 2.)

Beyond the limits of that exception, the jurisdiction of the District Courts has been made exclusive of the courts of the State. That is the import of the terms made use of, and it is also the effect of the construction placed upon such provisions of stat-utory law. (*Dudley* v. *Mayhew*, 3 Comst., 9, 15, 18.)

This change in the law deprived the State courts of all other authority than that mentioned in it, over actions of this description as soon as the provision went into effect, and that was long before this action was tried. There was nothing in the saving provisions of the Revised Statutes which prevented it from including pending actions. They simply restrained the effect of the repealing clauses contained in the revision then made. (U. S. R. S., p. 2, § 13; p. 1091, § 5597.)

That is entirely evident from the last section of the statutes, for it declares that all acts passed since the 1st day of December, 1873, are to have full effect, as if they were passed after the enactment of the revision as subsequent statutes, and as repealing any portion of the revision inconsistent therewith. (Id., 1092.) And the force of that general provision has not been restrained by any thing con-

tained in the preceding thirteenth section, for that simply saves the liability of the party, and not the proceedings taken to enforce it; besides, this was not the repeal of any existing law. It had not before been provided that the courts of the State should entertain jurisdiction over actions of this description; but ·the exclusive powers of the district courts had not been so far extended as to deprive the State courts of their powers in this respect, and for that reason, it was held that actions of this description could be prosecuted before them. It was because congress had not acted at all upon the subject that their jurisdiction remained unaffected. That omission was supplied by the amendment of 1874, and its effect was at once to abridge the powers of this court to such an extent as to deprive it of all authority over the present action from the time that amendment became operative as the law. The law in this respect is · similar to a change considered by the court in *Insurance Company* v. *Ritchie* (5 Wall., 541), where an act passed in 1866 declared that a preceding act passed in 1833 should not apply to such a case. And the chief justice, in his opinion upon the effect produced by the subsequent act, said: "This is equivalent to a repeal of an act giving jurisdiction of a pending suit. It is an express prohibition of the exercise of the jurisdiction conferred by the act of 1833 in cases arising under the internal revenue laws. It is clear that when the jurisdiction of a cause depends upon a statute, the repeal of a statute takes away the jurisdiction. And it is equally clear that where a jurisdiction conferred by statute is prohibited by a subsequent statute, the prohibition is so far a repeal of the statute conferring the jurisdiction." (Id., 544.) The same principle was also maintained in the case of *The Assessor* v. *Osbornes* (9 id., 567). It was there held that the repeal of a statute withdrew the jurisdiction it conferred upon the courts; and where it contains no saving clause, "all pending actions fell, as the jurisdiction depended entirely upon the acts of congress." (Id., 575.) That was the effect of the amendment made in 1874. It withdrew from the courts of the State the authority over these cases, which had previously been maintained only because congress had not directly or indirectly prohibited it, and confined the jurisdiction from that time to the district courts, except when actions, by their permission, should be brought for the recovery of debts owing to the

bankrupt, not exceeding in amount the sum of $500. This was not a demand of that limited nature, and, consequently, not within even this exceptional authority.

As the power of this court to hear and determine this case has been withdrawn, it is unnecessary to examine any of the other objections to the recovery on the part of the defendants. They do not seem to be tenable, because all the property was neither transferred nor delivered by the bankrupt before the seventh day of January ; but their further consideration should be dispensed with, because of the present want of power in the court to decide them in this case.

The judgment should be reversed and the complaint dismissed, but as that has become necessary because of the legislation which took effect during the pendency of the action, it should be without costs.

Davis, P. J., and Brady, J., concurred.

Judgment reversed and complaint dismissed, without costs.