## RICHARD FISHELL *vs.* WILLIAM MORRIS.

New Haven Co., June T., 1889. ANDREWS C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The statute (Gen. Statutes, § 3047) giving a lien for the keeping of horses and cattle, creates a lien where the common law would not have done.

But the word "lien" is not used in it in any different sense from that which it has at common law.

Under the statute, as under the common law, possession is necessary to the preservation of the lien.

The keeper of a livery stable kept a horse for its owner under an agreement for a certain monthly payment, the owner at his pleasure taking it away for his personal use and returning it without objection on the part of the keeper. While thus having the horse in his possession and away from the stable, the owner sold it to a *bonâ fide* purchaser, who brought it to the stable, informed the keeper of his purchase of it, and left it at the stable to be kept for him. At this time there was a considerable sum due the keeper for the past keeping of the horse. Held that the keeper, if he had in the circumstances a lien upon the horse, had lost it by the taking of it away by the former owner, and its sale, and that the lien was not revived by the purchaser's returning it to the stable.

[Argued June 6th—decided September 13th, 1889.]

REPLEVIN for a horse and other articles of personal property; brought to the City Court of the city of New Haven, and heard before *Pickett, J.* Facts found and judgment rendered for the plaintiff as to all the articles except the horse, and for the return of the latter to the defendant, and that the defendant recovered five dollars damages and his costs. The plaintiff appealed. The case is fully stated in the opinion.

*J. P. Goodhart*, for the appellant.

1. The lien was divested when the horse was taken from the defendant's possession by the owner, without objection on the part of the defendant. 1 Jones on Liens, 3, 20, 21, 641, 697; Bouvier's Law Dict. *Lien;* 3 Kent's Com., 365; Addison on Contracts, 422; *Sweet v. Pym*, 1 East, 4; *Ham-*

mond v. *Barclay*, 2 id., 235; *Lickbarrow* v. *Mason*, 6 id., 21, 25; *Wilson* v. *Balfour*, 2 Campb., 579; *Forth* v. *Simpson*, 13 Q. B., 680; *Goodrich* v. *Willard*, 7 Gray, 183; *Perkins* v. *Boardman*, 14 id., 481; *Walker* v. *Staples*, 5 Allen, 34; *Thompson* v. *Dolliver*, 132 Mass., 103; *Papineau* v. *Wentworth*, 136 id., 543; *Vinal* v. *Spofford*, 139 id., 126; *Bailey* v. *Quint*, 22 Verm., 464; *Bigelow* v. *Heaton*, 4 Denio, 496. The statute, Gen. Statutes, § 3047, providing for a lien on animals for their keeping, creates a right in derogation of the common law and is to be strictly construed.

2. If we are not right in this, yet when the horse was sold to an innocent purchaser for value while out of the possession of the defendant, the lien was divested. 1 Jones on Liens, 22, 696; *The Bolivar*, Olcott's Adm. R., 474; *Loring* v. *Flora*, 24 Ark., 151; *Rose* v. *Gray*, 40 Geo., 156; *McFarland* v. *Wheeler*, 26 Wend., 467; *Perkins* v. *Boardman*, 14 Gray, 481; *Marseilles Manuf. Co.* v. *Morgan*, 12 Neb., 66.

3. The lien was not revived when the horse was returned to the stable. It was returned by the plaintiff as purchaser and owner, and for the purpose of having the horse kept there for him, and not with any reference to the former keeping of the horse.

*P. W. Chase*, for the appellee.

1. .The special agreement entered into by the defendant with Bohan, by which the defendant was to receive a certain sum per week for the keeping of the horse, places him within the privileges of Gen. Statutes, § 3047. In that statute the word " lien " has not the same meaning as it has at common law, and the common law rule does not apply to it, and continued and absolute possession of the pledgee is not a prerequisite to the enforcement of such a lien. In the states of Pennsylvania and Tennessee, where statutes similar to ours have been passed upon by the courts, they hold that a stable-keeper does not lose his lien when he permits a horse to be used temporarily by its owner. *Caldwell* v. *Tutt*, 10 Lea, (Tenn.,) 258; *Young* v. *Kimbal*, 23 Penn. St.,

193.  The stable-keeper's lien upon a horse which is being kept at his stable, is a right which will prevail against an attaching creditor, even when the horse was attached while in the possession of its owner, the debtor, and far from the control of the liveryman.  *Caldwell* v. *Tutt, supra.*  To permit the owner of the horse to use it, when needed, is a necessary part of the agreement, and therefore must be consistent with the right of lien that belongs to the occupation. *Young* v. *Kimbal, supra.*  This rule seems to be a reasonable one.  If such a practice was not allowed, stable-keepers would lose their business, as no one would board a horse where he could not get it to use when wanted.  What the plaintiff maintains to be the rule seems unreasonable. Under such a doctrine neither party is benefited; in fact both are injured.

2. If the lien is divested under such circumstances, it certainly revives upon the return of the horse into the keeper's custody.  The two cases cited by the plaintiff, *Papineau* v. *Wentworth,* 136 Mass., 543, and *Vinal* v. *Spofford,* 139 Mass., 126, are not decisive of the question.  In neither case are the facts like those in the case at bar, as in both cases the liveryman's recovery of possession of the horse was not a peaceable one.  In the case at bar the possession of the horse was recovered peaceably before any apparent delivery had taken place between Bohan and the plaintiff.  Bohan took his horse from the stable in the morning, and in company with the plaintiff he returned it in the evening.  There had been no complete sale binding third parties because there had been no apparent delivery.  Bohan had charge of the team when he returned, and from him the defendant took peaceable possession.

ANDREWS, C. J.  The plaintiff brought an action of replevin against the defendant for a horse, a wagon, a harness, a whip and two robes.  The trial court rendered judgment that he retain possession of all the chattels but the horse, and that he should return the horse to the possession of the defendant.  From that judgment the plaintiff appeals.

The defendant is a livery-stable keeper. One Bohan, of whom the plaintiff bought all of the property, on or about the 17th day of November, 1887, he then being the owner, made a special contract with the defendant to keep and feed the horse for the sum of eighteen dollars a month. Bohan owned the horse up to December 1st, 1888. During all that time the defendant continued to keep and feed the horse under the agreement; Bohan calling for, taking, temporarily using and returning the horse at his pleasure, without objection on the part of the defendant on account of arrearages usually due for the keeping of the horse. The plaintiff bought the horse and the other property of Bohan on the said first day of December, 1888. Previous to that day Bohan had advertised the property for sale and had requested and urged the plaintiff to buy the same. The defendant had full knowledge of such intended sale by Bohan. On that day Bohan was justly indebted to the defendant in the sum of $48 for the keeping and feeding of the horse. On the morning of that day Bohan took the horse and the other property from the defendant's stable, as he had been accustomed to do, with the knowledge and consent of the defendant, (although it did not appear that the defendant had knowledge that Bohan intended to sell the property on that day,) and while away from the stable again applied to the plaintiff to purchase the same, which the plaintiff did, and took all the chattels into his possession and paid therefor in full. The plaintiff used the horse and wagon in his own business for a short time, and then, at the suggestion of and in company with Bohan, drove to the defendant's stable for the purpose of engaging further keeping for the horse. Bohan introduced the plaintiff to the defendant, informed him that he, Bohan, had sold the horse to the plaintiff, and said he thought the plaintiff would like to board the horse there, and named twenty dollars per month as the price to be paid therefor. The defendant received and stabled the horse. After he had done so he inquired of the plaintiff if he had paid for the horse and the other property. The plaintiff replied that he had paid in full. The defendant

then said to the plaintiff that he had a claim of $48 on the horse for its keeping and feeding, and that the plaintiff must govern himself accordingly. The plaintiff said he should want to take the horse out the next day to use, whereupon the defendant said the horse could not be taken from his possession till the claim of $48 was paid. Afterwards on the same day the plaintiff made demand on the defendant to deliver to him the horse and the other articles, which the defendant refused. This suit was then brought. The plaintiff had no knowledge at the time he bought the property that Bohan was indebted to the defendant, and there was no claim that he acted otherwise than in good faith.

The defendant claimed the right to detain the horse in his possession until the debt of $48 was paid, by virtue of his lien thereon for its keeping and feeding. The plaintiff, on the other hand, asked the court to rule that the lien of the defendant on the horse for its keeping and feeding was divested when the horse was taken from his immediate possession, without objection on his part, by the owner of the horse, and by such owner sold and delivered to the plaintiff, an innocent purchaser for value; and that the lien did not revive when the horse was returned to the defendant's stable by the plaintiff. The court did not so rule, but rendered judgment for the return of the horse as above stated.

A lien is the right which a creditor has of detaining in his possession the goods of his debtor until the debt is paid. To the common law idea of a lien it is necessary that the creditor should have the actual possession of the goods over which the lien is claimed and that the debt should have been incurred in respect to the very goods detained. As possession is the foundation of the common law lien, any parting with the possession operates as a waiver or forfeiture of it. "A lien is a mere right to retain possession of a chattel, which right is immediately lost on the possession being parted with." Cockburn, C. J., in *Donalds* v. *Suckling*, L. R., 1 Q. B., 612. See also Story on Bailments, § 311,

*Case of an Hostler*, Yelverton, 67, *note; Pinney* v. *Wells*, 10 Conn., 115..

It is admitted by the defendant's counsel that he would have no right of lien except for the statute. Gen. Statutes, § 3047. This statute gives a lien in cases where the common law does not give one. *Miller* v. *Marston*, 35 Maine, 153; *Goodrich* v. *Willard*, 7 Gray, 183; *Judson* v. *Etheridge*, 1 Crompt. & Mees., 724. *Jackson* v. *Cummings*, 5 Mees. & Wels., 342; *Parsons* v. *Ginzell*, 2 Com. Bench, 544. But there is no intimation in the statute that it uses the word "lien" in any different sense from that which it has in the common law. On the contrary the statute seems to use that word in its precise common law meaning. It creates a lien in favor of the "keeper"—that is, the one in possession—of animals. It says that the animals, naming the kind, "shall be subject to a lien for the price of such keeping in favor of the person keeping the same until such debt is paid."

This is the exact idea of the common law, the right of a creditor to detain the property of his debtor in his possession till the debt is paid.

In all cases where statutes have created any right of security on the property of a debtor in the nature of a lien, not depending on possession, they have provided carefully for a registration of the transaction.

The contract between Bohan and the defendant, as interpreted by their usage, was such that Bohan had the right to take the horse at any time from the stable for the purpose of using it. The plaintiff claims that a livery stable keeper who holds a horse at the constant disposal of the owner is the mere servant of the owner and does not have any such possession as would invest him with the right of lien. We do not decide the point. On the finding we must assume that Bohan rightfully took the horse from the defendant's stable and sold it to the plaintiff. This was a transaction which divested the lien. Whatever right the defendant might have had to detain the horse as against Bohan, we are of opinion he had none against the plaintiff.

There is error in the judgment so far as it directs a return of the horse to the defendant, and for the defendant to recover cost, and this part is reversed.

In this opinion the other judges concurred.