UNITED STATES of America, upon the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY,

v.

Glenn F. CAYLOR and wife, Charlotte Caylor.

Civ. A. No. 3334.

United States District Court
E. D. Tennesseee, N. D.
Jan. 17, 1958.

Chas. J. McCarthy, Knoxville, Tenn., for T. V. A.

Goddard & Gamble, Maryville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

The Government has moved for summary judgment in its favor on the ground that the pleadings, affidavits and the Court's order of October 15, 1957, show that there is no genuine issue as to any material fact and that it is entitled to the relief sought in the complaint as a matter of law. The complaint was filed on September 5, 1957, by the Government upon the relation and for the use of the Tennessee Valley Authority against the defendants, Caylor and wife, for the purpose of requiring them to remove a house that was located on a tract of land in Blount County, Tennessee, described as Tract CKA–264, which was located entirely within the limits of plaintiff's right of way, or easement, in said property. The easement rights were acquired by the Government by deed from Dave F. Trotter and wife in 1943 for a consideration of $100, which deed was recorded in the Register's office of Blount County, Tennessee. The grant, which is described in detail in the instrument filed as Exhibit "A" to the complaint, conveyed to the Government a permanent easement and right of way for electric power transmission line purposes over the strip of land described in the deed, 100 feet wide with the right to keep it "clear of brush, timber, inflammable structures and fire hazards." The transmission line was under construction at the time the complaint was filed and was scheduled to be energized on November 1, 1957.

Defendants purchased the parcel of land which is subject to plaintiff's easement on January 17, 1955, as shown by recorded deed in Volume 185, page 511, of the Register's office in Blount County, Tennessee. The house was on the property and within the limits of plaintiff's easement at the time of acquisition by defendants. Defendants' predecessor in title erected the house on the property in 1946.

Written notice was given defendants on August 26, 1957, to remove the house from the right of way because it was an inflammable structure and would create

a fire hazard located under a high power energized transmission line.

Defendants refused to remove the house and the Government filed the suit asking for a mandatory injunction requiring defendants to remove the structure before the transmission line was energized. An answer was filed to the complaint on September 23, 1957, in which defendants denied that they unlawfully maintained the house within plaintiff's right of way. The answer admitted that defendants had been requested to remove the house from the right of way but that they had refused to do so upon the ground that plaintiff did not have any title or right to the parcel of land on which the house was located. The answer states that any title claim or right that the plaintiff had in the property was abandoned and thereby reverted to the defendants.

A jury was demanded to try the issues. A hearing was held in Greeneville, Tennessee, on October 4, 1957, on the Government's motion for a mandatory injunction to require the removal of the house forthwith. At that time counsel for the defendants contended that the injunction should not issue without giving defendants the time to exhaust the discovery procedures in an effort to develop facts to support their contention that the Government had lost their easement by failing to use it for power line purposes for a period of several years, or from 1943, the date of acquisition, until 1957, the year in which the construction of the power line commenced, and that there was an abandonment of the easement because of non-user.

By order entered October 15, 1957, with the consent of the parties, either expressed or implied, the Court directed the removal of the house from the easement right of way forthwith in order to avoid irreparable injury, subject to the proviso that the removal would in no way prejudice defendants' legal rights to the property on which the house was located.

The order further provided that if defendants' contentions that plaintiff had lost its easement by abandonment are sustained, it was agreed that the just compensation for removal and relocation of the house shall be $3,500.

Since the entry of this order interrogatories have been submitted by defendants and answered by the plaintiff. In brief, the answers and the exhibits, the latter being copies of various resolutions passed by the Board of Directors of the Tennessee Valley Authority, show that the right of way, or easement, was not abandoned by the Board of Directors, or anyone authorized by the Board. On the contrary, the resolutions show that the Board of Directors of the Tennessee Valley Authority never abandoned the plan to build the electric transmission line that traverses the property, and which was actually built in 1957.

The affidavit of Leona L. Malkemus, Assistant Secretary of the Tennessee Valley Authority, shows that the Board of Directors did not take any action to abandon the right of way, or easement.

Defendants' predecessors in title purchased the property in 1950 from William W. Williams and wife and they were aware that the plaintiff owned the easement and right of way for transmission line purposes over the property and that the house was located entirely within the Government's right of way. The easement was brought to their attention in May 1954, after they had negotiated a contract to sell the property for approximately $12,600, which failed of consummation due to the fact that the prospective purchaser could not secure a loan on account of the house being located on Government property. At that time the owners were advised of the Government's plan to build a 154,000-volt transmission line over the right of way. The owners obtained an estimate of the cost for removal of the house and the purchase of an additional 40 feet on the west side of the parcel to facilitate relocation of the house. Mr. Williams informed defendant Glenn F. Caylor that the house was in the limits of the Government's easement and that it would have to be moved prior to the construction of a transmission line. Mr. Caylor stated that he

would take his chances on the line never being built and that if he had to move his house he could relocate it. Williams sold the house to defendants for $2,500 less than he had been offered for it on account of it being within the limits of the Government's right of way.

The sole issue for determination of the Court as shown by the record and the briefs for the respective parties is whether the United States has lost its easement or right of way which it acquired by deed in 1943, by abandonment.

Counsel for the defendants discuss at considerable length in their brief situations where the Court should and should not issue mandatory injunctions without trial on the merits.

■ This court recognizes the fact that the mandatory injunction is an extraordinary remedy and should not be issued on affidavits if the record presents doubtful questions of law or fact.

Counsel for defendants state that since title to the property on which the house was located is in question, that a preliminary mandatory injunction should not be issued until evidence is heard on the disputed questions of fact which are presented by the answer.

■ The challenge of the Government's title to the easement by the defendants is based on the contention that the easement was abandoned and the Government thereby lost its rights therein. This presents a legal question which is the only question in the case for determination.

■ Congress is given exclusive power by the Constitution to regulate and dispose of property belonging to the United States. Utah Power & Light Co. v. United States, 243 U.S. 389, 404, 37 S. Ct. 387, 61 L.Ed. 791; Gibson v. Chouteau, 13 Wall. 92, 80 U.S. 92, 99, 20 L.Ed. 534.

Officers of the Government cannot dispose of Government property unless authorized to do so by Congress. Royal Indemnity Co. v. United States, 313 U.S. 289, 294, 61 S.Ct. 995, 85 L.Ed. 1361;

United States v. City & County of San Francisco, D.C., 112 F.Supp. 451, 453.

The Board of Directors of the Tennessee Valley Authority have been given the sole authority by Congress to dispose of property owned by the United States and operated by TVA. 16 U.S.C.A. §§ 831c, 831dd. Hence, the TVA Board was the only authority that could dispose of, or abandon, the easement that is the subject of this suit.

■ Inactivity, or neglect, upon the part of Government officers is insufficient to cause the Government to lose its property. Government property is held in trust for the benefit of its citizens. United States v. California, 332 U.S. 19, 67 S. Ct. 1658, 91 L.Ed. 1889; Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; State of Utah v. United States, 284 U.S. 534, 545, 52 S.Ct. 232, 76 L.Ed. 469; United States v. Warm Springs Irr. Dist., D.C., 38 F. Supp. 239, 244.

■ An easement acquired by the United States by deed cannot be lost by adverse possession. Redfield v. Parks, 132 U.S. 239, 10 S.Ct. 83, 33 L.Ed. 327; Stull v. United States, 8 Cir., 61 F.2d 826; Brown v. Devlin, D.C., 116 F.Supp. 45.

■ Inactivity or neglect on the part of the officers of the Government is no defense against the claim by the Government to protect its property. Utah Power & Light Co. v. United States, supra, 243 U.S. at page 409, 37 S.Ct. 387; United States v. Sandlass, D.C., 34 F.Supp. 81.

■ An easement acquired by deed is not abandoned by mere non-user as between individual contestants. Boyd v. Hunt, 102 Tenn. 495, 52 S.W. 131; Smelcer v. Rippetoe, 24 Tenn.App. 516, 147 S. W.2d 109; Cottrell v. Daniel, 30 Tenn. App. 339, 205 S.W.2d 973.

Defendants cite United States v. Pennsylvania & Lake Erie Dock Co., 6 Cir., 272 F. 839, in support of their insistence that an easement may be abandoned by the Government for failure to use for the

purpose for which it was acquired. That case involved a suit by the Government to recover a small strip of submerged land extending from the mouth of the Grand River in Fairport Harbor, Lake County, Ohio, into Lake Erie. The Government had appropriated this land and constructed thereon a pier for temporary purposes. The Government ceased to use the pier and it became very much deteriorated by reason of age and neglect. The Court held that the Government was not entitled to relief because it had abandoned the land. In the course of the opinion, the Court stated that it was the contention of the Government that it could not abandon its property without an Act of Congress to that effect, and that the failure of the Government to keep its pier in repair was not evidence to sustain abandonment. The contention was based on Section 3 of Article 4 of the Constitution.

The Court, in holding that the contention was without merit, said:

"This undoubtedly is the law in so far as it applied to land the title to which has been acquired or originally vested in the government, but it does not apply to property in which the government by virtue of its dominant right appropriates a mere easement for purposes more or less temporary in their nature. In this particular case the appropriation of this submerged strip of land upon which to construct a government pier was not a taking of private property for public use for permanent purposes, but rather the mere lawful exercise of a governmental power for the common good. Greenleaf-Johnson Lumber Co. v. Garrison, 237 U.S. 251, 35 S.Ct. 551, 59 L. Ed. 939; West Chicago Street Railroad Co. v. Chicago, 201 U.S. 506, 26 S.Ct. 518, 50 L.Ed. 845. There is substantial difference between the temporary exercise of a dominant governmental power over property and the permanent appropriation of private property for public use. In the latter case the title to the property passes to the government. In the former case it acquires absolutely no estate in the property, further than to subordinate it to the purpose for which that power is exercised so long only as it may appear to be necessary to exercise such power for the public good." United States v. Pennsylvania & Lake Erie Dock Co., supra, 272 F. 843, 844.

The holding of the Court in the Pennsylvania & Lake Erie Dock Company case is authority for the Government in the present case.

The other case cited by defendants to support their contention of abandonment is that of Rogers v. City of Knoxville, Tenn.App., 289 S.W.2d 868, 871. In that case the Tennessee Power Company, a private public utility, appropriated a strip of land over three lots, which were a part of a larger tract of land, owned by plaintiff, for transmission power line purposes. This easement was taken over by the TVA when it acquired the properties of the Tennessee Public Service Company. The TVA removed the transmission facilities located on this property to another location. The power line was dismantled in 1944 and remained unused until after the easement was granted to the city by the TVA in 1952. The trial court held that the easement acquired by the Tennessee Public Service was "only a possessory right and not a transmissible right; that subsequent conveyances passed nothing and that the city had no right to use the land when it began the construction of the new line."

The Court of Appeals held that the public service corporation occupied the land without condemnation by appropriating a right of way over the land for electric transmission lines; that the landowner commenced no proceedings within the time limited by statute to recover compensation or damages for the taking; that the public service corporation acquired only a possessory right which was not transferrable, and the City of Knoxville had no right to construct a transmission power line on the property without paying the landowner therefor.

Application for certiorari was made by the City of Knoxville to the Supreme Court which was denied on November 7, 1955, by opinion written by Chief Justice Neal. So far as is known by this Court the opinion has not been published but a copy of it is attached to the brief filed in behalf of defendants.

The Supreme Court in denying the application for certiorari said in part:

"The counsel for petitioner has dealt with this question ably and extensively in a printed brief. No question can be raised as to the right of TVA or the defendant to acquire and appropriate land without formal condemnation proceedings. Code Sections 3131, 3132. But can they take it and keep it without paying for it? The question here is, can a public utility (TVA) having abandoned its easement for a period of 8 years (as evidenced by removing all steel towers and lines in 1944) sell the easement to the defendant in 1952? In our view of the question it cannot be done. The insistence that the work order recitation, herein referred to, and the posting of signs upon the area is not sufficient to confer title to the property by adverse possession of seven years. All the TVA had was an easement and it must be used for utility purposes. Otherwise it reverts to the original owner of the land."

It is to be observed that the private public service corporation appropriated the easement in the above case without paying the landowner any compensation and the landowner let the time pass as provided by statute in which to sue the service corporation for the value of the land taken by appropriation. The land was taken for power line purposes, only. The Court held that it was abandoned for power line purposes and when so abandoned whatever interest the transferee of the public service corporation had in it, terminated.

Thus, the attempted transfer of the easement by the TVA, who was the transferee of the Tennessee public service company to the City of Knoxville, was without effect as the TVA had lost any interest it had in the easement when it ceased to use it for power purposes.

This case does not support the contention that the Government lost its easement in the present case which was conveyed to it by deed duly recorded in the county where the parcel of land that is subject to the easement is located.

The opinions of the Appellate Courts in the Rogers case recognize that the rule announced in that case is not applicable to an easement acquired by grant.

It is the conclusion of the Court that the Government did not lose its easement and that it is entitled to a summary judgment for the relief sought in the complaint.

Let an order be presented in conformity with the views herein expressed.